2000-NMSC-037

15 P.3d 491

STATE of New Mexico, Plaintiff–Respondent,

v.

Manuel BONILLA, Defendant–Petitioner.

No. 25,801.

Supreme Court of New Mexico.

Dec. 12, 2000.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Max W. Shepherd, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

MAES, Justice.

{1} Defendant Manuel Bonilla asks this Court to vacate his sentence imposed after his conviction for trafficking in a controlled substance. Defendant claims that the sentencing judge evinced a harsh predisposition when sentencing defendants, like Bonilla, who elected to have their guilt or innocence decided by a jury. We agree that Defendant's rights under the Sixth Amendment to the United States Constitution were impermissibly infringed upon by the trial judge. We vacate Defendant's sentence and remand

for another sentencing before a different judge.

*FACTS*

{2} Defendant was tried and convicted by a jury of trafficking in a controlled substance.

{3} We cannot determine from the record whether the prosecutor ever offered or Defendant ever requested a plea bargain.

{4} Defendant's sentencing was scheduled for September 29, 1997. Before his case came on, the court was sentencing another Defendant and in the process announced that it was the general policy of the court that "if a person is found guilty of a crime in this court by a jury, that the statutory penalty be imposed." The words "by a jury" were uttered clearly and intentionally by the judge. Immediately thereafter, Defendant's case came on for sentencing. His counsel enumerated some mitigating factors-that while Defendant had some prior misdemeanor convictions, this was his first felony, that he had a large family to support, that he was a good worker in the oil fields and could be re-employed if released, that the restitution ordered was only $150, and also that the amount of cocaine involved was small. Counsel for Defendant then interposed a protest based on the above-quoted comment the judge had made at the previous hearing:

> [W]e just heard the court's policy that, if the defendant takes a case to trial and is convicted by a jury, that the court's policy is to impose the statutory penalty. We had been, we would state for the record we were unaware of that policy. And we would object to that policy as improper if the effect of that policy is to penalize a defendant for exercising his right to a jury trial.

Judge Clingman did not respond to counsel's comment. The pre-sentence report recommended incarceration, but did not specify a time period. The court concluded there were no mitigating factors and sentenced Defendant to the basic statutory sentence of nine years imprisonment.

{5} The Court of Appeals affirmed the district court's sentence, relying on *State v. Augustus,* 97 N.M. 100, 101, 637 P.2d 50, 51 (Ct.App.1981), and concluding that the "sen-

tence itself" was legal. In *Augustus,* Defendant had had open heart surgery and argued that a subsequent 90 day prison term was cruel and unusual punishment. The *Augustus* court noted that there was "no claim that the sentence was not in accordance with law," but merely was responding to the bare claim that the trial court had abused its discretion in sentencing. The *Augustus* court then separately undertook a constitutional analysis, concluding that Defendant's Eighth Amendment rights had not been violated. In this case, the court below did no constitutional analysis, despite the strength of Defendant's argument that once the constitutional issues were considered, the sentence was not in fact "in accordance with the law."

*STANDARD OF REVIEW*

{6} A trial court's sentencing is reviewed for abuse of discretion. *State v. Jensen,* 1998–NMCA–034, ¶ 19, 124 N.M. 726, 955 P.2d 195; *State v. Augustus,* 97 N.M. at 101, 637 P.2d at 51 (Ct.App.1981). "Judicial discretion is abused if the action taken by the trial court is arbitrary or capricious.... Such abuse of discretion will not be presumed; it must be affirmatively established." *State v. Greene,* 92 N.M. 347, 349, 588 P.2d 548, 550 (1978) (citations omitted.) We examine the facts of this case in the light of this standard of review.

*DISCUSSION*

{7} "A practice which discourages the Fifth Amendment right not to plead guilty, which deters the Sixth Amendment right to demand a jury trial and which chills the assertion of these constitutional rights by penalizing those who choose to exercise them is patently unconstitutional." *Thurston v. State,* 791 S.W.2d 893, 896 (Mo.App.1990) (citing *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) ("If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional")); *see also United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ("[W]hile an individual certainly may be penalized for violating the

law, he just as certainly may not be punished for exercising a protected statutory or constitutional right...."); *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("[F] or an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' "); *North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) ("[T]he imposition of ... a punishment 'penalizing those who choose to exercise' constitutional rights, 'would be patently unconstitutional.' "), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

■ {8} In light of this precedent, our inquiry is limited to determining whether Judge Clingman's statements affirmatively established a policy that appears to penalize defendants for exercise of their Sixth Amendment right to trial by jury. Defendant refers us to the cases of *Thurston* and *In re Lewallen,* 23 Cal.3d 274, 152 Cal.Rptr. 528, 590 P.2d 383 (1979). In the former case the trial judge made the following comment:

> I figured everybody knew by that stage of my career, that, you know, you *go to trial* as a persistent or prior offender and get convicted, I'm more than likely going to give you a max-type sentence and I'm going to run them consecutive. That's been consistent with me for twelve years now.

*Thurston,* 791 S.W.2d at 896 (emphasis added). On appeal, the Missouri Court of Appeals vacated Defendant's sentence, stating, "[e]nhancement of punishment based solely upon a Defendant's refusal to plead guilty and to exercise his right to have his guilt proven beyond a reasonable doubt has been universally condemned." *Id.* In *Lewallen,* the trial judge commented, "[a]nd as far as I'm concerned, if a Defendant wants a jury trial and he's convicted, he's not going to be penalized with that, but *on the other hand* he's not going to have the consideration he would have had if there was a plea." *Lewallen,* 152 Cal.Rptr. 528, 590 P.2d at 385 (emphasis added). The California Supreme Court held that these comments showed that Defendant's refusal to plea bargain and insistence on trial improperly influenced the court's sentence. *Id.* at 388. Defendant argues that Judge Clingman's statements evidence a similarly unconstitutional sentencing policy. We agree that the trial judge's statements might be construed to penalize a defendant's exercise of a constitutional right.

{9} The Court of Appeals was mistaken in relying on *State v. Scussel,* 117 N.M. 241, 243, 871 P.2d 5, 7 (Ct.App.1994), for the proposition that a negative assessment of Judge Clingman's remarks would be speculative. In *Scussel,* the defendant had apparently been tried and convicted under both subsections of the then-effective DWI statute. However the trial judge verbally indicated at one point that the conviction was only under one subsection. The *Scussel* court held that such verbal comments by a trial judge may not be used as the basis for reversal, *id.,* relying in turn on *Ledbetter v. Webb,* 103 N.M. 597, 604, 711 P.2d 874, 881 (1985) ("although [oral] comments may be used to clarify a finding of fact, [they] may not provide the basis for reversing that finding"). Neither *Scussel* nor *Ledbetter* is applicable to this case because we are not dealing with an issue of fact over which there may have been confusion, but rather a fundamental legal misconception about the constitutionality of a sentencing practice that appears to penalize Defendant and others similarly situated. *See Bracy v. Gramley,* 520 U.S. 899, 905, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (holding the right to a fair trial in a fair tribunal includes the right to have a judge who does not have an actual bias against the defendant).

■ {10} A sentencing hearing is mandatory. *See State v. Tomlinson,* 98 N.M. 337, 339, 648 P.2d 795, 797 (Ct.App.1982). The sentencing judge must make a "careful, independent evaluation of defendant's rehabilitative potential." *State v. James,* 109 N.M. 278, 283, 784 P.2d 1021, 1026 (Ct.App. 1989), citing *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *see also State v. Segotta,* 100 N.M. 498, 501, 672 P.2d 1129, 1132 (1983) (suggesting legislature "required the court to consider, when determining the sentence within the presumptive range, not only the nature and elements of the offense and the character

and record of the offender, but also aggravating and mitigating circumstances surrounding the offense and the offender"). This list is not a limitation on the factors a trial court may properly consider in imposing a basic sentence. *State v. Sosa*, 122 N.M. 446, 449, 926 P.2d 299, 302 (1996). While we recognize that "[t]here is no obligation on the part of a judge to depart from the basic sentence," yet we also stress that in determining whether to depart from the basic sentence, a judge may not penalize a defendant for exercising his or her constitutional right to a jury trial.

{11} The State would have us ignore the judge's remarks, arguing that imposition of the basic sentence is per se non-violative of a defendant's rights at sentencing. It is only by looking at more egregious sentencing remarks that we can place the problem into its constitutional context. In *United States v. Derrick*, 519 F.2d 1, 2 (6th Cir.1975), the trial judge had said, "I can't put this man on probation. He has put this government to two long trials and goodness knows how much money the government has spent on this case. In those situations I don't feel like I can put him on probation." The appellate court noted that "the process of sentencing an offender . . . is not wholly immunized from judicial review solely because the sentence imposed falls somewhere within the statutory limits." *Id.* at 3, quoting *United States v. Daniels*, 446 F.2d 967, 969 (6th Cir.1971). The *Derrick* court also said, "it is improper for a district judge to penalize a defendant for exercising his constitutional right to plead not guilty and go to trial, no matter how overwhelming the evidence of his guilt." *Derrick*, 519 F.2d at 3.

{12} The State argues that because Defendant apparently was never offered a plea agreement, he could only have pled guilty or gone to trial. Therefore, the State concludes, the court could not have been "punishing" him for refusing an offer and demanding his right to a trial. It must be pointed out, however, that the same kind of effect would have been at work here—the judge's policy would have improperly encouraged the defendant to plead guilty and hope for a lighter sentence rather than to go to trial and be assured that he would receive extra punishment, if convicted, for doing so. Furthermore, if, as Defendant argues, the remark indicated a judicial policy, he indeed could have been manipulated by a *judicial* system that guaranteed him a harsher sentence if he opted for a jury trial. Because a guilty plea avoids a trial and the time and expense associated with it, defendants are often persuaded by *prosecutors* to plead guilty hoping for a lesser ultimate sentence, *see* Wayne R. LaFave and Jerold H. Israel, 5 *Criminal Procedure* § 21.1 at 4–6 (1999), but a judge may not so act. "A court cannot impose a harsher sentence merely because the defendant pleads not guilty and exercises his right to a jury trial." *People v. Weber*, 208 Cal.Rptr. 719, 723 (Cal.Super.1984).

{13} The State also contends that Defendant did not even know of the judge's sentencing policy at the time he made his choice to go to trial, so it could have had no effect on him. Were there such a policy and had Defendant or his counsel been unaware of such policy, Defendant's lack of knowledge would certainly not be a rationale for such a policy. Were Defendant the victim, albeit ignorant, of a systematic flaw in the way justice was administered, still he deserves to be the object of whatever curative measures can be taken. The chilling effect of a sentencing scheme on the right not to plead guilty or the right to a jury trial can be unconstitutional. *See United States v. Jackson*, 390 U.S. 570, 583, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) ("A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right"); *see also State v. Stevens*, 96 N.M. 627, 628–29, 633 P.2d 1225, 1226–27 (1981) (recognizing the danger of a chilling effect on the right to trial by jury). By upholding Defendant's constitutional rights we protect the rights of other defendants who may be faced with similar choices in the future. *State v. Buckrham*, 167 N.J.Super. 455, 400 A.2d 1241, 1243 (1989), *vacated on other grounds*, 173 N.J.Super. 87, 413 A.2d 617 (1980) (holding that upon charges being increased following an appeal, the state carries the burden of showing that the increase was not due to Defendant's exercise of her constitutional rights); *see also United States v. Lippi*, 435 F.Supp.

808, 816 (D.N.J.1977) (concluding rule against prosecutorial pressure on Defendant's exercise of constitutional rights was designed not only to protect Defendant from retaliation for exercise but also to prevent chilling of exercise of such rights by future defendants).

{14} While *Thurston* seems most closely on point, the State attempts to distinguish it on the grounds that, for twelve years, it was the consistent practice of the judge in the *Thurston* case to impose the maximum possible sentence upon all prior offenders who exercised the right to a jury trial. Acknowledging that the practice of the judge in *Thurston* clearly may be factually distinguished, we move to correct even the appearance of such a practice even though it may not have had as damaging a result.

## CONCLUSION

{15} We conclude that in sentencing Defendant the prior remarks of the trial court indicated it "improperly consider[ed] the defendant's exercise of his constitutional right to a jury trial." *State v. Hazel,* 317 S.C. 368, 453 S.E.2d 879, 880 (1995). This chilling of Defendant's constitutional right to a trial by jury was an abuse of discretion. *Bushnell v. State,* 97 Nev. 591, 637 P.2d 529, 531 (1981) ("Imposition of a harsher sentence based upon the defendant's exercise of his constitutional rights is an abuse of discretion. . . ."). We therefore vacate the defendant's sentence. In order to avoid any appearance of impropriety we remand for another sentencing before a different judge.

{16} **IT IS SO ORDERED.**

MINZNER, C.J., BACA, FRANCHINI, and SERNA, JJ., concur.